## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

PAMELA GELLER,

               Plaintiff,

     -v.-

ANDREW CUOMO, in his official capacity as Governor of the State of New York; BILL DE BLASIO, individually and in his official capacity as Mayor, City of New York, New York; and DERMOT SHEA, individually and in his official capacity as the Police Commissioner, City of New York, New York,

               Defendants.

Case No.  20-4653

**COMPLAINT**

[42 U.S.C. § 1983]

       Plaintiff Pamela Geller ("Plaintiff"), by and through undersigned counsel, brings this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof alleges the following upon information and belief:

### INTRODUCTION

       1.     This case seeks to protect and vindicate fundamental liberties that citizens of the United States enjoy free from government interference.  These liberties are not conferred or granted by government to then be rescinded at the will and whims of government officials.  These God-given liberties are possessed by the people, and they are guaranteed against government interference by the United States Constitution, which is the supreme law of the land.  First among these liberties is the right to peacefully protest government officials through the freedom of speech and the right to peaceably assemble guaranteed by the First Amendment.

       2.     The right to freedom of speech is not a right to catharsis.  It is a right to meaningfully protest and assemble in public in order to change public policy.  The most effective way to exercise this right is to organize and participate in a large public protest.  Indeed, this fact is confirmed by the recent protests surrounding the death of George Floyd—protests which

- 1 -

Defendants' permit and strongly endorse despite the pandemic.  However, Defendants, through the adoption and enforcement of executive edicts, have suspended this fundamental right for other protests, including the peaceful protests planned by Plaintiff.

3.     John Adams warned that "Liberty once lost is lost forever."  All tyranny needs to gain a foothold is for people of good conscience to remain silent.  Through this Complaint, Plaintiff challenges Defendants' selective suspension of the First Amendment.  There is no justification, pandemic or otherwise, for a government official to revoke this fundamental right for some of the people.

4.     Accordingly, this case seeks to protect and vindicate fundamental constitutional rights.  It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendants' restrictions on Plaintiff's right to engage in peaceful protests and protected speech in public forums in the City of New York and throughout the State of New York (hereinafter referred to as "First Amendment restrictions").

5.     Plaintiff seeks a declaration that Defendants violated her clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants' First Amendment restrictions violate the United States Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendants' First Amendment restrictions as set forth in this Complaint; and nominal damages for the past loss of her constitutional rights as against Defendants de Blasio and Shea.  Plaintiff also seeks an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

6.     This action arises under the Constitution and laws of the United States.  Jurisdiction

is conferred on this court pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by *Ex parte Young*,

209 U.S. 123 (1908), and by the general legal and equitable powers of this Court.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events

or omissions giving rise to Plaintiff's claims occurred in this district.

## PLAINTIFF

9.      Plaintiff Pamela Geller is an adult citizen of the United States and a resident of the

City of New York (hereinafter "New York," "New York City," or "City").

10.     Plaintiff is a champion of the First Amendment.  She is the president of the

American Freedom Defense Initiative, a nonprofit organization that defends the right to freedom

of speech.  She is a published author, a conservative blogger, and a political activist.

11.     Plaintiff was the organizer of the successful public protest of the Ground Zero

mosque construction in Lower Manhattan.  She has also successfully challenged government

restrictions on free speech in New York, *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880

F. Supp. 2d 456, 466 (S.D.N.Y. 2012), Washington, D.C., *Am. Freedom Def. Initiative v. Wash.

Metro. Area Transit. Auth.*, 898 F. Supp. 2d 73 (D.D.C. 2012), Philadelphia, *Am. Freedom Def.

Initiative v. Se. Pa. Transp. Auth.*, No. 2:14-cv-5335, 2015 U.S. Dist. LEXIS 29571, (E.D. Pa.

Mar. 11, 2015), and Seattle, *Am. Freedom Def. Initiative v. King Cnty.*, 904 F.3d 1126 (9th Cir.

2018), among others.

12.     But for Defendants' suspension of First Amendment activity within the City as set

forth in this Complaint, Plaintiff Geller would have organized and participated in a public protest

of Defendant de Blasio's and Defendant Cuomo's draconian restrictions on liberty they have

imposed during this current COVID-19 pandemic.

## DEFENDANTS

13.    Defendant Andrew Cuomo is the Governor of the State of New York.  As the Governor, Defendant Cuomo is responsible for adopting, creating, and enforcing the executive and emergency policies and practices of the State of New York, including the challenged policy and practice of suspending the First Amendment for some protestors within the State as set forth in this Complaint.

14.    At all relevant times herein, Defendant Cuomo was a government official acting under the color of State law.  Defendant Cuomo is sued in his official capacity as the Governor of the State of New York.

15.    Defendant Bill de Blasio is the Mayor of New York City.  As the City Mayor, Defendant de Blasio is responsible for adopting, creating, and enforcing the executive and emergency policies and practices of the City, including the challenged policy and practice of suspending the First Amendment for some protestors within the City as set forth in this Complaint.

16.    At all relevant times herein, Defendant de Blasio was a government official acting under the color of State law.  Defendant de Blasio is sued individually and in his official capacity as the New York City Mayor.

17.    Defendant Dermot Shea is the New York City Police Commissioner.  As the City Police Commissioner, Defendant Shea is responsible for enforcing the policies and practices of the City and the State, including the challenged policies and practices of suspending the First Amendment for some protestors within the City and the State of New York as set forth in this Complaint.

18.    At all relevant times herein, Defendant Shea was a government official acting under

the color of State law.  Defendant Shea is sued individually and in his official capacity as the City Police Commissioner.

## STATEMENT OF FACTS

### Defendant Cuomo Issues Orders Restricting First Amendment Rights

19.     Pursuant to his authority as Governor, Defendant Cuomo is empowered to issue executive orders.  A violation of an executive order can result in a civil or criminal penalty.

20.     On or about March 23, 2020, Defendant Cuomo issued Executive Order ("EO") No. 202.10, which took effect immediately and remained in effect pursuant to Section 29-a of Article 2-B of the Executive Law of the State of New York for 30 days unless it was terminated or modified at an earlier date.

21.     EO No. 202.10 ordered, in relevant part, that "[n]on-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations or other social events) are canceled or postponed at this time."

22.     On April 7, 2020, Defendant Cuomo issued EO No. 202.14, which extended the restriction on "non-essential gatherings" through April 29, 2020.

23.     On April 16, 2020, Defendant Cuomo issued EO No. 202.18, which extended the restriction on "non-essential gatherings" through May 15, 2020.

24.     On May 8, 2020, Defendant Cuomo issued EO No. 202.29, which extended the restriction on "non-essential gatherings" through June 7, 2020.

25.     On May 21, 2020, Defendant Cuomo issued EO No. 202.32, which modified EO 202.10 "to permit a gathering of ten or fewer individuals for any religious service or ceremony, or for the purposes of any Memorial Day service or commemoration."

26.     On May 22, 2020, Defendant Cuomo issued EO No. 202.33, which modified EO

202.32 "to permit any non-essential gathering of ten or fewer individuals, for any lawful purpose or reason."

27.     On May 29, 2020, Defendant Cuomo issued EO No. 202.35, which extended the modified restriction on "non-essential gatherings" until June 28, 2020.

28.     On June 13, 2020, Defendant Governor Cuomo issued EO No. 202.41, which extended the modified restriction on "non-essential gatherings" until July 13, 2020.

29.     On June 15 2020, Defendant Cuomo issued EO No. 202.42, which modified EO 202.41 by extending its effective date until July 15, 2020, and by "allow[ing] twenty-five (25) or fewer individuals, for any lawful purpose or reason, provided that the location of the gathering is in a region that has reached Phase 3 of the State's reopening."

30.     Upon information and belief, at the time of the filing of this Complaint, the City of New York is in Phase 1 of the State's reopening plan and remains subject to EO 202.41's prohibition restricting non-essential group activities, including protests in public fora, to "ten or fewer individuals."

**<u>Defendant de Blasio Issues Orders Restricting First Amendment Rights</u>**

31.     Pursuant to his authority as Mayor, Defendant de Blasio is empowered to issue emergency executive orders.  A violation of an emergency executive order can result in a civil or criminal penalty.

32.     Pursuant to his authority as Police Commissioner, Defendant Shea is empowered and required to enforce Defendant de Blasio's emergency executive orders and Defendant Cuomo's executive orders via the City's police force.

33.     On or about March 25, 2020, Defendant de Blasio issued Emergency Executive Order ("EEO") No. 103, which took effect immediately and remained in effect for five (5) days

unless terminated or modified at an earlier date.

34.     EEO No. 103 ordered that "any non-essential gatherings of individuals of any size for any reason shall be cancelled or postponed."

35.     Through a series of executive orders issued beginning on March 30, 2020 and continuing every five days throughout the month of April, Defendant de Blasio extended the restriction on "non-essential gatherings" for an additional five days.

36.     On May 4, 2020, Defendant de Blasio issued EEO No. 111, which again extended the restriction on "non-essential gatherings" for an additional five days.

37.     Upon information and belief, prior to May 4, 2020, Defendants had never made any public statement or issued any official or unofficial clarification that the restriction on "non-essential gatherings" would apply to prohibit otherwise lawful free speech activity.

38.     During a press conference held on May 4, 2020, Defendants de Blasio and Shea publicly and officially announced that the "shut down" imposed by the executive orders included the suspension of the right to publicly protest in the City.  In other words, free speech activity was considered a "non-essential gathering" and thus prohibited.

39.     Upon information and belief, the May 4, 2020, press conference announcement by Defendants de Blasio and Shea was prompted by a question relating to a small group of protestors who were instructed by New York City police to disband and who were threatened by the police with summonses and arrest if they failed to disband.  Upon information and belief, the reporting of this event on May 4, 2020, was the first public report of Defendants de Blasio and Shea enforcing the executive orders against individuals peaceably assembling for the purpose of public protest.

40.     Through a series of executive orders issued beginning on May 9, 2020 and

continuing every five days through May 24, Defendant de Blasio extended the restriction on "non-essential gatherings" for an additional five days.

41.     On May 29, 2020, Defendant de Blasio issued EEO No. 115, which extended the restriction on "non-essential gatherings" for an additional five days and modified it in relevant part as follows: "[A]ny non-essential gathering of individuals of any size for any reason shall be cancelled or postponed, provided however that gatherings of ten (10) or fewer individuals where such individuals adhere to applicable social distancing protocols and cleaning and disinfection protocols are permitted."

42.     Through a series of executive orders issued beginning on June 3, 2020 and continuing approximately every five days through June 17, Defendant de Blasio extended the modified restriction on "non-essential gatherings" for an additional five days.

43.     The purpose and effect of the restrictions on "non-essential gatherings"—the challenged First Amendment restrictions—were, and continue to be, to shut down most of the City and the State of New York for certain protest activity.  Upon information and belief, Defendants' rationale for the "shut down" and thus the challenged restrictions has been, and continues to be, to stop the spread of COVID-19 and to "flatten the curve" of infection, hospitalization, and mortality rates related to COVID-19.

44.     Upon information and belief, Defendants Cuomo and de Blasio intend to issue additional executive orders over the coming weeks and months that will continue the "shut down" and thus continue the challenged First Amendment restrictions.

45.     Upon information and belief, Defendants Cuomo and de Blasio intend to lessen or increase the "shut down" and thus First Amendment restrictions in the future depending upon their respective views of the severity of the COVID-19 infection, hospitalization, and mortality rates in

New York.

46.     Despite suspending First Amendment activity within the City pursuant to the challenged First Amendment restrictions, Defendant de Blasio has implemented an Open Streets initiative whereby certain City streets are open to pedestrians and cyclists.  However, these same City streets remain closed for Plaintiff's First Amendment protest activity of more than 10 people even if the protestors maintain proper social distancing.

47.     Prior to the May 4, 2020 announcement by Defendants de Blasio and Shea that Defendant de Blasio's executive orders prohibit lawful, free speech activity throughout the City, Plaintiff was planning public protests of Defendant de Blasio's draconian restrictions imposed during this current pandemic.  Plaintiff was planning to protest throughout the months of May and June, and possibly as long as the restrictions continued, in public fora throughout the City.  She was planning protests of approximately 25 to 100 people.  As a result of the challenged First Amendment restrictions, Plaintiff had to cease and cancel her planned protests, thus causing her irreparable harm.

48.     Subsequently, Defendant Cuomo has also taken the formal position in litigation that his executive orders also prohibit lawful, free speech activity throughout the State.

**Defendants Encourage New York City Protests Violating the First Amendment Restrictions Based Upon the Content and Viewpoint of the Message**

49.     Apparently sparked by the death of George Floyd while in police custody in Minneapolis, Minnesota, beginning on May 28, 2020, and continuing daily through the current month of June 2020, hundreds and thousands of protestors have taken to the streets of New York City protesting what they allege to be police brutality against Blacks and what is referred to as systemic racism, and calling for various reforms.

50.     Notwithstanding the First Amendment restrictions in place at the time and their

enforcement by Defendants against other New Yorkers engaged in public group activity, including

activity protected by the First Amendment's right to freedom of speech and to peaceably assemble,

Defendants have embraced the content and viewpoint of these protestors' message and have

encouraged the demonstrations and protests (hereinafter referred to as "government-approved

protests").

51.    For example, on June 1, 2020, just four days after the start of the government-

approved protests, Defendants Cuomo and de Blasio issued a press release with the following

quoted statements:

> "I support and protect peaceful protest in this city.  The demonstrations we've seen
> have been generally peaceful.  **We can't let violence undermine the message of
> this moment.  It is too important and the message must be heard**.  Tonight, to
> protect against violence and property damage, the Governor and I have decided to
> implement a citywide curfew," said Mayor Bill de Blasio.   "The Police
> Commissioner and I have spoken at length about the incidents we've all seen in
> recent days where officers didn't uphold the values of this city or the NYPD.  We
> agree on the need for swift action.  He will speak later today on how officers will
> be held accountable."

> "**I stand behind the protestors and their message**, but unfortunately there are
> people who are looking to take advantage of and discredit this moment for their
> own personal gain," said Governor Cuomo.  "The violence and the looting that has
> gone on in New York City has been bad for the city, the state and this entire national
> movement, undermining the and distracting from this righteous cause.  **While we
> encourage people to protest peacefully and make their voices heard**, safety of
> the general public is paramount and cannot be compromised.  At the same time, we
> are in the midst of a global pandemic which spreads through crowds and threatens
> public health.  Tonight the Mayor and are implementing a citywide curfew starting
> at 11 PM and doubling the NYPD presence across the city."

52.    Press Release, Mayor Bill de Blasio and Governor Andrew M. Cuomo, Mayor de Blasio and

Governor Cuomo Announce Citywide Curfew in New York City Beginning at 11 PM Tonight (June 1, 2020)

(emphasis added) *available at* https://www1.nyc.gov/office-of-the-mayor/news/394-20/mayor-de-blasio-governor-

cuomo-citywide-curfew-new-york-city-beginning-11-pm (last visited on June 17, 2020). Beyond the verbal

praise of the protestors who were openly and massively violating the challenged First Amendment

restrictions, it was widely reported that high ranking New York City police officers actually participated in the protests by kneeling with protestors and holding hands with other protestors while not wearing any face coverings or gloves.  Social distancing was also disregarded.  The below photograph is but one of many examples:



This picture is captioned as follows:

> Chief of Department of the New York City Police, Terence Monahan, takes a knee with activists as protesters paused while walking in New York, Monday, June 1, 2020.  Demonstrators took to the streets of New York to protest the death of George Floyd, who died May 25 after he was pinned at the neck by a Minneapolis police officer. (AP Photo/Craig Ruttle).

"See it: One of NYPD's top cops kneels, hugs protester," Pix 11 (June 1, 2020) *available at* https://www.pix11.com/news/local-news/see-it-one-of-nypds-top-cops-kneels-hugs-protester (last visited on June 17, 2020).

53.   Chief Monahan's conduct pictured above violates Defendant de Blasio's and Defendant Cuomo's executive orders prohibiting "non-essential gatherings" consisting of more

than 10 people and the executive orders requiring social distancing in public, and it violates

Defendant Cuomo's Executive Order 202.17 requiring face coverings in public settings when

social distancing cannot be observed.

54.     Notwithstanding the blatant violations of the executive orders and, in particular, the

challenged First Amendment restrictions, Defendant de Blasio enthusiastically endorsed Chief

Monahan's conduct:

> Terry Monahan made the point out in Washington Square Park, anyone who hasn't
> seen that video of Terry Monahan in Washington Square Park needs to see it, it is
> a profound moment.  **Don't just see the part where he kneels down, see what he
> says.  And he's saying, pure passion from the heart, and he points to the
> officers around us, and he says none of us believe what happened in Minnesota
> was right.  And it was a very important moment, it was a watershed moment
> to me**, and I think we need this going forward, that police leaders, police officers,
> I'd like to see police unions even say, when something is done wrong in policing,
> we are all going to own it.  We all want to fix it together.

Official Transcript of Press Conference (June 3, 2020) available at https://www1.nyc.gov/office-

of-the-mayor/news/402-20/transcript-mayor-de-blasio-holds-media-availability  (last  visited  on

June 18, 2020) (emphasis added).  And yet again five days later:

> Chief Monahan, I spoke to him throughout this.  I constantly was in touch with
> Commissioner Shea, Chief Monahan, Chief Pichardo.  We constantly compared
> notes.  And I want to say again, Chief Monaghan in Washington Square Park did
> something that I hope will be respected.  The highest ranking uniformed officer in
> the largest, most important police force in America – he spoke to the protesters.  He
> said, none of us condoned and can accept what happened, that those officers did in
> Minnesota, and we are all in this together and we have to bring our city forward
> together.  **And then they said, show us some respect, take a knee with us, and
> he did.  It was a powerful, meaningful moment.  And for all the things that
> need to be better, we also have to remember the things that were right, and
> that was something right**.

Official Transcript of Press Conference (June 8, 2020) *available at* https://www1.nyc.gov/office-

of-the-mayor/news/419-20/transcript-mayor-de-blasio-holds-media-availability  (last  visited  on

June 18, 2020) (emphasis added).

**Plaintiff's First Amendment Activity Restricted**

55.     Prior to the May 4, 2020, press conference, Plaintiff had understood that First Amendment activity, specifically including peaceful public protests in public fora within the City, was not forbidden by either Defendant Cuomo's executive orders or Defendant de Blasio's emergency executive orders insofar as she assumed such activity was considered "essential" to a free society and thus not within the scope of the restrictions.

56.     Prior to the May 4, 2020, press conference, Plaintiff had planned for and begun to organize participation in an upcoming public protest of Defendants de Blasio's policies, including the draconian restrictions he had imposed upon businesses, religious worship, and other fundamental liberties during the COVID-19 pandemic.  The protest was to include between 25 and 100 people standing silently with face coverings, observing social distancing protocols, and holding signs conveying their protest message.

57.     Upon learning of Defendant de Blasio's and Shea's position that public protests were considered non-essential activity and thus forbidden under the executive orders, Plaintiff cancelled her planned protests.

58.     But for the challenged First Amendment restrictions, Plaintiff would have organized and participated in several public protests, with each protest including between 25 and 100 people.

59.     But for the challenged First Amendment restrictions, Plaintiff would have participated in public protests, maintaining proper social distancing, on the City streets that have been opened pursuant to Defendant de Blasio's Open Streets initiative and in public fora, including the public sidewalks surrounding City Hall plaza.

**Plaintiff's Original First Amendment Lawsuit**

60.     Three days after the May 4, 2020, press conference, Plaintiff filed her original First Amendment lawsuit in this Court against Defendants de Blasio and Shea alleging, *inter alia*, that Defendant de Blasio's executive orders violated Plaintiff's right to peaceably assemble and her right of free speech in violation of the First Amendment and sought preliminary and permanent injunctive relief and nominal damages.

61.     On May 12, 2020, Plaintiff filed a motion in this Court seeking a temporary restraining order (TRO) and preliminary injunction against Defendants de Blasio and Shea.

62.     On May 18, 2020, the Court issued an opinion and order denying the motion for TRO and, pursuant to agreement by the parties, issued a final judgment in favor of Defendants de Blasio and Shea.  Plaintiff filed her notice of appeal later that same day.

63.     On May 20, 2020, Plaintiff filed an emergency motion for an injunction pending appeal in the U.S. Court of Appeals for the Second Circuit seeking to immediately prevent Defendants de Blasio and Shea from enforcing the restrictions on her First Amendment activity.

64.     As set forth above, on May 22, 2020, Defendant Cuomo modified his restriction on "non-essential group activity" (*i.e.*, permitting up to 10-person public group activity, including protests).  Also as set forth above, Defendant de Blasio followed suit and modified his restriction on May 29, 2020.

65.     Plaintiff's emergency motion was briefed within 9 days, and on June 2, 2020, the parties argued the motion before a motions panel of the Second Circuit.

66.     During oral argument, the circuit judges extensively questioned Defendants' counsel as to how the City's recent embrace of the government-approved protests fit with their enforcement of the restrictions against Plaintiff's protest activity especially in light of Defendants

approving of and allowing protest activity when they agree with the content and viewpoint of the protestors while disallowing protest activity when they do not agree with the content and viewpoint of the protestors.  In response, Defendants' counsel took the position that, because the government-approved protests only began after the filing of the Notice of Appeal and the briefing of the emergency motion before the Court of Appeals, the appellate court should not consider the issues arising from the government-approved protests.

67.     On June 4, 2020, the Second Circuit denied Plaintiff's emergency motion but made clear that Plaintiff was free to renew her motion before the Court of Appeals after establishing a proper record below.  The Second Circuit's decision in full follows:

> Appellant moves for an emergency injunction pending appeal.  Upon due consideration, it is hereby ORDERED that the Appellant's motion for an injunction pending appeal is DENIED because the Appellant has failed to meet the requisite standard.  *See LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994).  This denial is without prejudice to renewal in the event that Appellant amends her complaint and/or seeks appropriate relief in the district court in light of facts and arguments articulated for the first time during oral argument.

68.     The parties agreed to stipulate to the dismissal of the pending appeal before the Second Circuit so that Plaintiff could file this lawsuit alleging the facts relating to the government-approved protests.

69.     The Second Circuit dismissed the pending appeal on June 8, 2020.

70.     Public protests are an effective way to change public policy, particularly during this current COVID-19 pandemic.  For example, shortly following a large public protest outside of the State Capitol in Lansing, Michigan, the Michigan Governor eased many of the restrictions that fueled the protest, realizing that her political power and future were in jeopardy as a result of her exceedingly unpopular decisions.  Other similar protests have sprung up in major cities across the country.  Through the challenged First Amendment restrictions, Defendants de Blasio and Cuomo

seek to silence such opposition to their respective policies so that they can retain their political power.  Consequently, the challenged First Amendment restrictions operate to suppress those viewpoints that oppose efforts by government officials to control people's lives and restrict their liberty during the COVID-19 pandemic—a viewpoint shared by Plaintiff Geller.

71.     However, as set forth in this Complaint, during this pandemic, Defendants permit protests that express views that Defendants' favor, such as the views expressed by protestors during the government-approved protests.

72.     A large public protest is the most effective way for Plaintiff and others who oppose Defendants' policies to express and show their opposition.  Such protests also generate a great deal of media attention, particularly in New York City.  There are no reasonable or effective alternatives for Plaintiff and others to express their opposition to Defendants' policies.

73.     The United States Constitution places the burden on Defendants to set forth specific facts demonstrating that the suspension of the First Amendment in the City via the challenged First Amendment restrictions is necessary to serve a compelling state interest and that the restriction is narrowly drawn to achieve that interest.  Defendants cannot meet this burden here.

74.     Pursuant to clearly established First Amendment jurisprudence, the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury sufficient to warrant injunctive relief.

75.     In the final analysis, the First Amendment restrictions, as set forth in this Complaint, have no real or substantial relation to their claimed objective, and they are beyond all question, a plain, palpable invasion of rights secured by fundamental law.  Consequently, it is the duty of this Court to so adjudge, and thereby give effect to the United State Constitution by declaring the restrictions unlawful and enjoining their enforcement.

## FIRST CLAIM FOR RELIEF

### (Freedom of Speech and Assembly—First Amendment)

76.     Plaintiff hereby incorporates by reference all stated paragraphs.

77.     By reason of the aforementioned First Amendment restrictions created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff of her right to engage in protected speech and to peaceably assemble in public forums in violation of the First Amendment as applied to the States and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

78.     Defendants' First Amendment restrictions operate as a prior restraint on Plaintiff's speech.  Therefore, they come to this Court bearing a heavy presumption against their constitutional validity.

79.     Defendants' First Amendment restrictions, facially and as applied to Plaintiff's speech activity, are unreasonable and an effort to suppress expression merely because public officials oppose the speaker's views.

80.     Defendants' First Amendment restrictions operate as content- and viewpoint-based restrictions on Plaintiff's speech activity in traditional public fora.

81.     Defendants' First Amendment restrictions, facially and as applied to Plaintiff's speech activity, offend the First Amendment by granting public officials unbridled discretion such that an official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons.

82.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of her constitutional rights, entitling her to declaratory and injunctive relief as against all Defendants and nominal damages as against

Defendants de Blasio and Shea.

## SECOND CLAIM FOR RELIEF

### (Equal Protection—Fourteenth Amendment)

83.     Plaintiff hereby incorporates by reference all stated paragraphs.

84.     By reason of the aforementioned First Amendment restrictions created, adopted, and enforced under color of State law, Defendants have deprived Plaintiff of the equal protection of the law guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

85.     By granting use of a public forum to people whose views Defendants find acceptable (the government-approved protests), but denying use to those expressing less favored views, such as those expressed by Plaintiff, Defendants have violated the Equal Protection Clause of the Fourteenth Amendment.

86.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause, Plaintiff has suffered irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief against all Defendants and nominal damages as against Defendants de Blasio and Shea.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A)      to declare that Defendants violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B)      to declare that the challenged First Amendment restrictions violate the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

C)      to preliminarily and permanently enjoin Defendants' First Amendment

restrictions as set forth in this Complaint;

      D)    to award Plaintiff nominal damages as against Defendants de Blasio and Shea for the past loss of her constitutional rights as set forth in this Complaint;

      E)    to award Plaintiff her reasonable attorney fees, costs, and expenses as against all Defendants pursuant to 42 U.S.C. § 1988 and other applicable law; and

      F)    to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

*/s/ David Yerushalmi*
David Yerushalmi, Esq. (NY Bar No. 4632568; DC Bar No. 978179; Cal. Bar No. 132011; Ariz. Bar No. 0096)
383 Kingston Avenue
Suite 103
Brooklyn, New York 11213
Tel: (646) 262-0500; Fax: (801) 760-3901

Robert J. Muise, Esq.* (MI P62849)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901

*Subject to admission *pro hac vice*