UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PAMELA GELLER,

                Plaintiff,

      -against-                           Case No. 20 Civ. 4653 (ER)

ANDREW CUOMO, in his official capacity as
Governor of the State of New York; BILL DE
BLASIO, individually and in his official capacity as
Mayor, City of New York, New York; and DERMOT
SHEA, individually and in his official capacity as the
Police Commissioner, City of New York, New York,

                Defendants.

------------------------------------------------------------------X


## DEFENDANT GOVERNOR CUOMO'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendant Governor Cuomo*


Andrew Amer
  Special Litigation Counsel
James M. Thompson
  Assistant Attorney General
    *of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

    A.   The Novel Coronavirus...........................................................................................3

          1.   COVID-19 Surges in New York....................................................................4

          2.   New York on PAUSE .....................................................................................5

          3.   New York Re-Opens .......................................................................................6

          4.   The Pandemic Is Not Over ...........................................................................8

    B.   Procedural History .................................................................................................9

STANDARD OF REVIEW ...................................................................................................11

ARGUMENT ......................................................................................................................12

    I.    PLAINTIFF HAS NO CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS .............................................................................................................12

        A.  Plaintiff Is Collaterally Estopped From Raising Her Facial First Amendment Challenge Based On Geller I ............................................................................12

        B.  Even If Collateral Estoppel Does Not Apply, Plaintiff Has No Likelihood Of Success On The Merits Of Her Facial First Amendment Claim For The Same Reasons Set Forth In *Geller I* ...............................................................................................14

        C.  Because the COVID-19 Executive Orders Have Not Been Enforced Against Her, Plaintiff Cannot Assert an "As Applied" First Amendment Challenge ..............................19

        D.  Plaintiff Is Not Likely To Succeed On The Merits Of Her Selective Enforcement Equal Protection Claim ..................................................................................................20

    II.   THE PUBLIC INTEREST WEIGHS IN FAVOR OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS FROM A GLOBAL PANDEMIC .............................................24

CONCLUSION.....................................................................................................................26

**Cases**

*Antietam Battlefield KOA v. Hogan*, No. 20 Civ. 1130, 2020 WL 2556496 (D. Md. May 20, 2020)........19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................................22, 23

*Ass'n of Jewish Camp Operators v. Cuomo*, No. 20 Civ. 687, 2020 WL 3766496
　(N.D.N.Y. July 6, 2020) ...................................................................................................16, 18, 25

*Bar-Levey v. Gerow*, No. 18 Civ. 9454, 2020 WL 814925 (S.D.N.Y. Feb. 19, 2020)...............................21

*Bayley's Campground Inc. v. Mills,* No. 20 Civ. 176, 2020 WL 2791797 (D. Me. May 29, 2020) .............24

*Best Supplement Guide, LLC v. Newsom*, No. 20 Civ. 965, 2020 WL 2615022
　(E.D. Cal. May 22, 2020) ...................................................................................................................19

*Braun v. United Recovery Systems, LP*, 14 F. Supp. 3d 159 (S.D.N.Y. 2014) .................................18

*Calvary Chapel Lone Mtn. v. Sisolak*, No. 20 Civ. 907, 2020 WL 3108716 (D. Nev. June 11, 2020).......18

*Calvary Chapel of Bangor v. Mills*, No. 20 Civ. 156, 2020 WL 2310913 (D. Me. May 9, 2020)................19

*Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) .....................................19

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2003) ...........................................................................................21

*Corbett v. Cuomo*, No. 20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020)....................................9, 17, 18

*Cross Culture Christian Ctr. v. Newsom*, No. 20 Civ. 832, 2020 WL 2121111
　(E.D. Cal. May 5, 2020) ...................................................................................................................19

*Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093
　(7th Cir. May 16, 2020) ...................................................................................................................18

*Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 3249062
　(7th Cir. June 16, 2020)...................................................................................................................18

*Elmsford Apt. Associates, LLC v. Cuomo*, No. 20 Civ. 4062, 2020 WL 3498456
　(S.D.N.Y. June 29, 2020) .................................................................................................................18

*Fernandez v. Zoni Language Centers, Inc.*, No. 15 Civ. 6066, 2016 WL 2903274
　(S.D.N.Y. May 18, 2016)...................................................................................................................24

*Ferring B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265 (S.D.N.Y. 2019)....................................13, 14

*Geller v. de Blasio*, No. 20 Civ. 3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) ("*Geller I*"). ....passim

*Gish v. Newsom*, No. 20 Civ. 755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) ....................................19

*Henry v. DeSantis*, No. 20 Civ. 80729, 2020 WL 2479447 (S.D. Fla. May 14, 2020) ..............................19

*Heusser v. Hale*, 777 F. Supp. 2d 366 (D. Conn. 2011) ................................................................21

*Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 11 F.3d 539 (2d Cir. 2002)......................................24

*Ill. Republican Party v. Pritzker*, No. 20 Civ. 3489, 2020 WL 3604106 (N.D. Ill. July 2, 2020).........18, 23

*In re Abbott*, 954 F.3d 772 (5th Cir. Apr. 7, 2020)......................................................................18

*Jacobson v. Massachusetts*, 197 U.S. 11 (1905) .....................................................................15, 16

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third and Fourth Departments*, 852 F.3d 178 (2d Cir. 2017)....................................................................................................20

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, and Fourth Departments*, 118 F. Supp. 3d 554 (S.D.N.Y. 2015)................................................................................................20

*Kamholtz v. Yates County*, 350 F. App'x 589 (2d Cir. 2009)................................................................22

*L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18 Civ. 1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018)......................................................................................................11

*League of Independent Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 20-1581, 2020 WL 3468281 (6th Cir. June 24, 2020) ......................................................................................................18

*Legacy Church, Inc. v. Kunkel*, No. 20 Civ. 327, 2020 WL 1905586 (D.N.M. Apr. 17, 2020)..................19

*Levich v. Liberty Central School Dist.*, 361 F. Supp. 2d 151 (S.D.N.Y. 2004) ......................................13, 14

*Lighthouse Fellowship Church v. Northam*, No. 20 Civ. 204, 2020 WL 2110416 (E.D. Va. May 1, 2020) ...............................................................................................16, 19, 25

*Lilakos v. N.Y. City*, 808 F. App'x 4 (2d Cir. Apr. 8, 2020) ..............................................................23

*McCarthy v. Cuomo*, No. 20 Civ. 2124, 2020 WL 3286530 (E.D.N.Y. June 18, 2020) ........ 14, 15, 18, 19

*McGhee v. City of Flagstaff*, No. 20 Civ. 8081, 2020 WL 2308479 (D. Az. May 8, 2020) ........................19

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568 (S.D.N.Y. 2010) ....................21

*Open Our Oregon v. Brown*, 2020 WL 2542861 (D. Or. May 19, 2020) ..............................................19

*Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105 (2d Cir. 2014) ................11

*People ex. rel. Schneiderman v. Actavis PLLC*, 787 F.3d 638 (2d Cir. 2015) ........................................11

*Professional Beauty Fed. of Cal. v. Newsom*, No. 20 Civ. 4275, 2020 WL 3056126 (C.D. Cal. June 8, 2020) ......................................................................................................19

*Rosario v. Town of Mt. Kisco*, No. 16 Civ. 8766, 2020 WL 76420 (S.D.N.Y. Feb. 14, 2020) ....................22

*Six v. Newsom*, No. 20 Civ. 877, 2020 WL 2896543 (C.D. Cal. May 22, 2020) ......................................16

*Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, No. 20 Civ. 210, 2020 WL 3130295
  (E.D. Wash. June 12, 2020)...................................................................................................................18

*Soos v. Cuomo*, No. 20 Civ. 651, 2020 WL 3488742 (N.D.N.Y. June 26, 2020)......................................19

*Soos v. Cuomo*, No. 20 Civ. 651, Dkt. No. 38 (N.D.N.Y. July 1, 2020) .....................................................19

*South Bay Pentecostal Church v. Newsom*, 140 S.Ct. 1613 (2020)...........................................................16

*Talleywhacker, Inc. v. Cooper*, No. 20 Civ. 218, 2020 WL 3051207 (E.D.N.C. June 8, 2020) ...................19

*Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008) ............................................................ 11, 25

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012)................................................................................................13

**State Statutes**

N.Y. Exec. Law § 29-a .................................................................................................................................23

**Executive Orders**

N.Y. Exec. Order 202.10 ...............................................................................................................................6

N.Y. Exec. Order 202.33 ...............................................................................................................................6

N.Y. Exec. Order 202.42 ........................................................................................................................... 6, 8

N.Y. Exec. Order 202.45 ...............................................................................................................................6

Defendant Andrew M. Cuomo, sued in his official capacity as Governor of the State of New York ("Governor"), respectfully submits this memorandum of law, together with the Declaration of Brad Hutton, dated July 8, 2020 ("Hutton Decl"), and the exhibits attached thereto, in opposition to the motion for a preliminary injunction (Dkt. No. 16) filed by plaintiff Pamela Geller ("Plaintiff").

## PRELIMINARY STATEMENT

Facing an unprecedented global pandemic and a dangerously surging number of COVID-19 cases in New York, the Governor issued an executive order on March 23, 2020, banning all "[n]on-essential gatherings of individuals of any size for any reason" in order to prevent the spread of COVID-19 and protect the health of the general public. Under the executive orders now in force, non-essential gatherings are permitted involving up to 25 people and 50 people for any lawful purpose or reason, depending on whether the region in which the gathering occurs is in Phase Three or Phase Four of the State's re-opening plan, respectively.

Plaintiff is a self-described political activist who has staged a political protest in New York City in the past, and desires to do so again but claims she cannot as a result of these non-essential gathering restrictions. Plaintiff asserts two claims against the Governor, as well as New York City's mayor and police commissioner (collectively, "City Defendants"). First, she asserts that the Governor's executive orders imposing the gathering restrictions now in force, and the parallel New York City executive orders (collectively, "COVID-19 Executive Orders"), violate her First Amendment rights to free speech and peaceful assembly. Second, she claims that the Governor and the City Defendants are violating her right to equal protection under the law by selectively enforcing the COVID-19 Executive Orders against all protestors (including her) except those who are demonstrating in protest of the death of George Floyd and in support of the Black Lives Matter movement (the "BLM protests"). Plaintiff has moved for a preliminary injunction to enjoin the Governor and the City Defendants from enforcing the COVID-19 Executive Orders so that she can

stage protests of between 25 to 100 people. Plaintiff fails to satisfy the high standard for obtaining the extraordinary relief of a preliminary injunction.

**First**, the doctrine of collateral estoppel bars Plaintiff from asserting that she has a likelihood of success on the merits of her First Amendment challenge. (*See* Point I-A, *infra*.) Plaintiff previously moved unsuccessfully in this Court to temporarily enjoin the enforcement of New York City's initial total ban on all non-essential gatherings, a ban that is *more* restrictive than the executive orders challenged here. *See Geller v. de Blasio*, No. 20 Civ. 3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) (Cote, J.) ("*Geller I*"). In *Geller I*, Judge Cote found, based on "the severity of the public health crisis," that the total ban was a "reasonable and narrowly tailored" measure that survived scrutiny under Plaintiff's First Amendment challenge, and therefore Plaintiff was "not likely to succeed on the merits" of her First Amendment claim. *Id.* at *4-5. Plaintiff's First Amendment challenge here raises the same issue decided against her in *Geller I* – namely, whether she is likely to succeed in arguing that a ban on non-essential gatherings in response to the pandemic fails to serve a significant governmental interest that outweighs the burden on her speech. Having lost that issue two months ago after a full and fair opportunity to be heard, Plaintiff cannot take a second bite at the apple in this action.

Moreover, even if collateral estoppel did not apply, Plaintiff cannot establish a clear or substantial likelihood of success on the merits of her First Amendment claim for all the same reasons Judge Cote concluded in *Geller I* that the government's *more restrictive* non-essential gathering ban at issue in that case was a "reasonable and narrowly tailored" measure intended to mitigate the risk posed by the pandemic that should not be second guessed by the Court. *Id.* at *4. (*See* Points I-B and I-C, *infra*.) The growing avalanche of decisions issued by courts across the country refusing to enjoin state and local restrictions aimed at protecting the public against the spread of COVID-19 makes short shrift of Plaintiff's contention that she has a clear or substantial likelihood of success on the merits.

**Second**, Plaintiff similarly has no clear or substantial likelihood of success on the merits of

2

her Equal Protection claim. (*See* Point I-D, *infra*.) The gravamen of this claim is Plaintiff's assertion that the government is selectively enforcing the COVID-19 Executive Orders against all protestors, including her, except those participating in the BLM protests. But the Complaint contains no well-pleaded allegations from which the Court may reasonably infer the Governor has engaged in any selective enforcement of the COVID-19 Executive Orders in favor of BLM protests. Moreover, there is no allegation, nor can there be, that the Governor plays a role in issuing permits for New York City protests or otherwise directs local authorities on the enforcement of COVID-19 Executive Orders.

**Third**, the balance of the equities and public interest prongs of the preliminary injunction standard tip decidedly in favor of the Governor. (*See* Point II, *infra*.) The enormous threat to public health and safety posed by COVID-19 pandemic, which has hit New York harder than any other state, outweighs the imposition temporarily imposed on the Plaintiff by not being able to mount in person protests in New York City that exceed 25 participants. Despite the non-essential gathering restrictions in place, Plaintiff can still protest via other means, such as in the media or through her social media accounts that purportedly reach more than a million of her followers. The public interest is far better served by keeping in place the gathering restrictions that have proven to be so essential in slowing the spread of COVID-19 in New York, especially as a new wave of infections is surging in other states.

## STATEMENT OF FACTS

### A. The Novel Coronavirus

On January 7, 2020, following an outbreak of pneumonia of unknown etiology in China's Wuhan Province, Chinese authorities identified a novel coronavirus—COVID-19. The spread of this virus around the world has been well documented. COVID-19 is a highly infectious and potentially deadly respiratory disease that spreads easily from person-to-person. Because there is no pre-existing immunity against this new virus, it has spread worldwide in an exceptionally short period of time, posing a "serious public health risk." Hutton Decl. ¶¶ 2-6. On January 31, 2020, the World Health

Organization ("WHO") declared the novel coronavirus a "public health emergency of international concern." On March 11, 2020, WHO declared COVID-19 a global pandemic. *Id.* ¶ 5.

### 1. COVID-19 Surges in New York

New York recorded its first cases of COVID-19 in New York City on March 1, 2020, and in Westchester County on March 2, 2020. On March 7, 2020, Governor Cuomo declared a State of Emergency. As of March 7, 2020, 60 people had tested positive for COVID-19 in the State of New York. Cases in the United States totaled 275. By March 20, 2020, the number of individuals testing positive for COVID-19 in New York approached 10,000, and deaths exceeded 150. By April 20, 2020, over 267,000 individuals had tested positive for COVID-19 in New York, and over 13,000 people had died from COVID-19. *Id.* ¶¶ 7-10.

These events placed significant strain on New York State's healthcare system. For example, as the virus spread, New York faced a shortage of hospital beds, ventilators, and personal protective equipment such as masks and gloves. As a result, field hospitals were set up around the State, including at the Javits Center in New York City. The United States Navy sent the U.S.N.S Comfort, a Mercy-class hospital ship, to New York City to assist with medical care. Funeral homes were also overwhelmed, resulting in the use of mass graves to bury the dead. At the worst stage of the pandemic, New York State had more COVID-19 cases than any single country in the world. *Id.* ¶¶ 11-14.

Public health efforts aimed at stopping the pandemic from overwhelming a state's healthcare system are sometimes referred to as "flattening the curve." The "curve" refers to the projected increase in COVID-19 demands on the health care system over time. The rapid spread of COVID-19 in New York, in the United States, and worldwide, as detailed above, presented and continues to present a grave threat to New Yorkers and to New York's health care system. However, by taking strong action to ensure social distancing, as well as other important measures, that threat can be mitigated, and the curve can be flattened, so that the burdens of COVID-19 are spread over a longer

period of time and the state's health care system can continue to function at a high level. *Id.* ¶ 15.

In order to limit exposure to COVID-19 and slow its spread, the Centers for Disease Control and Prevention ("CDC") recommends keeping at least six feet away from others outside the household and avoiding groups and crowded places. According to the CDC, social distancing "is one of the best tools we have to avoid being exposed to this virus and slowing its spread locally and across the country and world" because it "helps limit contact with infected people and contaminated surfaces." *Id.* ¶ 17. As cases of COVID-19 rapidly increased across the globe, nations worldwide undertook emergency social distancing measures aimed at restricting its spread or "flattening the curve." *Id.* ¶ 18. Many states, including New York, likewise have taken emergency action to ensure social distancing, flatten the curve, and slow the spread of the pandemic. *Id.*

### 2. New York on PAUSE

On March 20, 2020, the Governor announced the New York State on PAUSE initiative. In his press conference announcing the initiative, the Governor explained that "[w]e know the most effective way to reduce the spread of this virus is through social distancing and density reduction measures . . . . This executive order builds on the actions we have taken to reduce the spread of the virus and protect the wellbeing of our friends, colleagues and neighbors." *Id.* ¶ 20. The 10-point New York State on PAUSE plan included, *inter alia*, closing all non-essential businesses, banning non-essential gatherings of any size for any reason, requiring individuals to practice social distancing when in public, limiting the use of public transportation, and imposing self-quarantine on individuals who are sick; the Governor took all of these actions to limit the spread of the virus. *Id.* ¶ 21.

Relevant to this case are the measures the Governor adopted as part of the New York on PAUSE initiative aimed at restricting non-essential gatherings. On March 23, 2020, the Governor issued Executive Order ("EO") 202.10, which banned non-essential gatherings of any size for any reason. On May 22, 2020, the Governor issued EO 202.33, which modified the ban to permit

gatherings of up to ten individuals for any lawful purpose or reason, provided the participants follow the social distancing and cleaning and disinfection protocols established by the New York State Department of Health ("Department"). *Id.* ¶¶ 23-25. On June 15, 2020, the Governor issued EO 202.42, which modified the restriction to permit gatherings of up to 25 individuals, provided the gathering is in a region that had reached the third phase of the re-opening plan, as described below, and the participants follow social distancing and cleaning and disinfection protocols. That same day, the Governor issued EO 202.45, which permits gatherings of up to 50 individuals for any purpose or reason, provided the gathering is in a region that had reached the fourth phase of the re-opening plan, and the participants follow the social distancing and cleaning and disinfection protocols. *Id.* ¶¶ 26-27.

### 3. New York Re-Opens

Before the New York State on PAUSE initiative, the daily increase in the number of positive COVID-19 tests within the state had been rising quickly. On March 19, 2020, the number of positive tests increased nearly 70%, from, 1,769 to 2,950. For the remainder of March and early April, the number of positive tests increased at an average rate of approximately 20% per day. On April 9, 2020, alone, over 10,000 people tested positive for COVID-19. Since April 9, 2020, the number of positive tests per day has declined steadily. On May 28, 2020, over 1,700 people tested positive for COVID-19. On June 29, 2020, 46,428 people were tested and only 319 tested positive—a positivity rate below 0.7 percent. The transmission rate—which measures the number of individuals infected on average by an infected individual—was at 1.4 percent. The transmission rate is now below 0.9 percent. At the current transmission rate, the spread of COVID-19 is declining in New York State. *Id.* ¶¶ 28-29.

Due to the success of the people of the State of New York at flattening the curve, the Governor transitioned from New York on PAUSE to a re-opening plan known as New York FORWARD, which established four "phases" to guide non-essential businesses and offices, as well as the essential businesses that remained open, on how to ease restrictions and return to normal

operations. *Id.* ¶ 30. A common thread in all re-opening phases is to reduce capacity by cutting the maximum occupancy rates and reduce transmission by requiring that people were masks and practice social distancing. *Id.* ¶ 31. The four phases are intended to have gradually increasing gathering sizes and decreasing occupancy restrictions, with Phase One having the most restrictions and Phase Four having the least. As the CDC stated in guidance released on June 12, 2020: "The more people an individual interacts with at a gathering and the longer that interaction lasts, the higher the potential risk of becoming infected with COVID-19 and COVID-19 spreading." *See* https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html.

The four phases are designed to allow monitoring for, and to quickly identify, any increase in virus transmission in a particular community that may have occurred as a result of moving to a new, less restrictive phase. This is necessary to ensure that virus transmission in a community is stable before continuing on to the next phase. Providing transmission rates remain stable during each transition, restrictions can be relaxed allowing for larger gatherings in each subsequent phase. As the regions of the state enter each new phase, the types of activities that can resume, and businesses that can re-open, expand and evolve, but the guidance continues to require that people wear masks and maintain social distancing where possible, reduce density, and follow the recommended hygiene and disinfecting protocols. The numbers of new infections, hospitalizations, and deaths continue to decline in areas where these guidelines are followed, which shows why adherence to these practices is so critical to safeguarding public health. Hutton Decl. ¶¶ 34-39.

Because New Yorkers followed the protocols and succeeded in flattening the curve, all New York State regions had entered at least Phase Three of the re-opening process as of July 6, 2020, with all Upstate regions having entered Phase Four. Additionally, although New York City is now in Phase Three, the Governor has prohibited for the time being all indoor dining at New York City restaurants (otherwise permitted in Phase Three regions) due to an alarming resurgence of increasing infections

in many states, including California, Texas, Florida, and Arizona. Now that New York City is in Phase Three, pursuant to Executive Order 202.42, non-essential gatherings of 25 or fewer individuals are permitted, provided that participants follow social distancing and cleaning and disinfection protocols established by the Department. *Id.* ¶¶ 40-42.

### 4. The Pandemic Is Not Over

Despite the gains that New York State has made, the pandemic is not over. On June 29, 2020, WHO reported 10,021,401 individuals confirmed positive for COVID-19, and 499,913 confirmed COVID-19 deaths worldwide. On June 29, 2020, the CDC reported that 2,545,250 individuals in the United States had tested positive for COVID-19, and 126,369 had died of COVID-19. Indeed, during the week of June 23, the United States reported the highest seven-day average of new COVID-19 cases. Alarmingly, as of July 6, 2020, the following 16 states had a seven day rolling average positivity rate over 10%: Alabama, Arkansas, Arizona, California, Florida, Georgia, Idaho, Iowa, Louisiana, Mississippi, Nevada, North Carolina, South Carolina, Tennessee, Texas, and Utah. *Id.* ¶¶ 43-44, 47.

In an effort to sustain the gains attributable to the New York on PAUSE initiative during the re-opening process, the Governor continues to monitor statewide and nationwide data on testing, transmission rate, and death toll, among other key indicators, and to take all necessary steps to deter the spread of the virus in New York. Among the steps the Governor recently took in response to the alarming surge of COVID-19 in other states, on June 24, 2020 he issued EO 205, "Quarantine Restrictions on Travelers Arriving in New York." This executive order requires all travelers entering New York from a state with a positive test rate higher than 10 per 100,000 residents, or higher than a 10% test positivity rate, over a seven day rolling average, to quarantine for a period of 14 days. This requirement is intended to reduce the spread of COVID-19 in New York and reduce and/or prevent

a second wave that would place undue strain on New York's health care system.[1]  *Id.* ¶¶ 45-46.

### B.    Procedural History

This is Plaintiff's second attempt to challenge New York's non-essential gathering restrictions.  On May 7, 2020, Plaintiff filed an action against the City Defendants in this Court to challenge on First Amendment grounds the executive order issued by Mayor Bill de Blasio implementing EO 202.10, which banned all non-essential gatherings for any reason.  *Geller I*, at *1; Complaint (ECF No. 1) ("Compl.") ¶ 60.  In that earlier case, Plaintiff moved for a temporary restraining order and preliminary injunction to enjoin the City Defendants from enforcing the ban, which the Court (Cote, J.) denied.  *Geller I*, at *1; Compl. ¶ 61.  Concluding that the ban was a "reasonable and narrowly tailored" measure to mitigate the risk to public health posed by COVID-19, Judge Cote held that Plaintiff "is not likely to succeed on the merits of her First Amendment claim."  *Geller I*, at *4-5.  At the request of the parties, Judge Cote entered judgment in favor of the City Defendants and closed the case.  *Id.* at *5; Compl. ¶ 62.

Plaintiff then filed an appeal from the judgment in *Geller I* and moved before the Second Circuit for an emergency injunction pending appeal.  Compl. ¶ 63.  During oral argument on the emergency motion, heard on June 2, 2020, Plaintiff's counsel acknowledged in response to the Panel's questioning that he was raising for the first time in the case a selective enforcement Equal Protection claim based on the then-recent BLM protests, a claim that was not raised or decided below.[2]  On June 4, 2020, the panel denied the emergency motion without prejudice to renew "in

---

[1] On July 2, 2020, in a recently-filed action, Judge Schofield of this Court denied a motion for a temporary restraining order to enjoin the Governor from enforcing EO 205.  *See Corbett v. Cuomo*, No. 20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020).

[2] *See* June 2, 2020 audio transcript of oral argument, available at https://www.ca2.uscourts.gov /decisions/isysquery/43def3fa-9208-4b0a-a2f1-76d95de5cba3/41-50/list/, at mark 8:00; *see also* Compl. ¶ 66.

the event that Appellant amends her complaint and/or seeks appropriate relief in the district court in light of facts and arguments articulated for the first time during oral argument." Compl. ¶ 67. Plaintiff and the City Defendants then agreed to voluntarily dismiss the appeal, and rather than seek to reopen *Geller I* and amend her complaint, Plaintiff chose to commence this action. *Id.* ¶ 68.

In her Complaint in this case, Plaintiff again sues the City Defendants, plus the Governor. *Id.* ¶¶ 13-18. Plaintiff alleges that she is a "political activist" and, but for the COVID-19 Executive Orders, would have "organized and participated in a public protest" of Defendants' conduct during the pandemic to include between 25 to 100 people. *Id.* ¶¶ 10-12, 56, 58. Plaintiff raises two claims in this action. In her first claim, Plaintiff asserts the COVID-19 Executive Orders violate her First Amendment rights of free speech and assembly. *Id.* ¶ 77. She purports to assert this claim as both a facial and as applied challenge. *Id.* ¶¶ 79, 81. In her second claim – the one she raised for the first time during oral argument before the Second Circuit in *Geller I* – Plaintiff asserts that Defendants are selectively enforcing the COVID-19 Executive Orders in violation of her right to equal protection under the law. *Id.* at ¶ 84. More specifically, Plaintiff alleges that Defendants selectively choose to enforce the COVID-19 Executive Orders against her and all others except those "protesting what they allege to be police brutality against Blacks and what is referred to as systemic racism," because "Defendants have embraced the content and viewpoint" of those protestors. *Id.* ¶¶ 49-50. In support of this assertion as to the Governor, Plaintiff relies exclusively on statements contained in a June 1, 2020 press release in which the Governor notes that "we are in the midst of a global pandemic which spreads through crowds and threatens public health," and announces that he and Mayor de Blasio are "implementing a citywide curfew starting at 11 PM and doubling the NYPD presence across the city." Compl. ¶ 51.

The Complaint contains no other allegations in support of Plaintiff's assertion that the Governor selectively enforces the COVID-19 Executive Orders in favor of BLM protests. Nor does

the Complaint allege the means by which the supposedly preferred BLM protests are organized or whether they are conducted pursuant to New York City permits.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiff bears the burden of establishing that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. The final two factors – the balance of the equities and the public interest – "merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18 Civ. 1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the movant is held "to a heightened standard" where, as here: (i) an injunction is "mandatory" (*i.e.*, altering the status quo rather than maintaining it) or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *People ex. rel. Schneiderman v. Actavis PLLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, the movant must show a "clear" or "substantial" likelihood of success on the merits, in addition to showing that the preliminary injunction is in the public interest.[3]

---

[3] Plaintiff argues an injunction may be granted where the movant can show "a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in Plaintiff's favor." *See* Plaintiffs' PI Brief, Dkt. No. 18, at 13 (quoting *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010)). That standard does not apply here because "[a] plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" *Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). Notably, Plaintiff does not acknowledge that Judge Cote already rejected this argument in *Geller I*, *see* 2020 WL 2520711 at *2, nor does she address the heightened "clear or substantial likelihood" standard applicable here.

*Id.* (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999) and *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir. 1981)). Plaintiff cannot meet this heightened standard.

## ARGUMENT

## I.   PLAINTIFF HAS NO CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff fails to demonstrate that she has any likelihood of succeeding on the merits of her claims, much less a likelihood that is "clear or substantial." For the reasons set forth below, Plaintiff is precluded from raising her facial First Amendment based on *Geller I*, cannot raise an as applied First Amendment challenge as this is a pre-enforcement action, may not raise a selective enforcement Equal Protection claim in the absence of a valid as applied challenge, and otherwise fails to state a claim against the Governor for selective enforcement of the COVID-19 Executive Orders.

### A.   Plaintiff Is Collaterally Estopped From Raising Her Facial First Amendment Challenge Based On *Geller I*

Plaintiff previously raised a facial First Amendment challenge to the City Defendants' implementation of the Governor's original ban on non-essential gatherings, EO 202.10, and lost. *See Geller v. de Blasio*, No. 20 Civ. 3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) ("*Geller I*"). In *Geller I*, issued only ago two months ago, Judge Cote denied Plaintiff's motion for a temporary restraining order based on exactly the same type of facial challenge Plaintiff puts forward now, holding that the City's COVID-19 Executive Order banning all non-essential gatherings was "reasonable and narrowly tailored." *Id.* at *4. The Second Circuit denied Plaintiff's request for an emergency injunction pending appeal, *see Geller v. De Blasio*, No. 20-1592 (2d Cir.), Dkt. No. 90, and Plaintiff stipulated to a voluntary dismissal of her appeal. *See Geller v. De Blasio*, No. 20-1592 (2d Cir.), Dkt. Nos. 91 & 98 (specifying that the dismissal was "with prejudice"); *see also* Compl. ¶¶ 67-69. Judge Cote's well-reasoned opinion, which was converted into a final judgment by agreement of the parties, *see Geller I*, 2020 WL 2520711 at *2, *5, collaterally estops Plaintiff from raising the same facial challenge in this action. *See Ferring*

*B.V. v. Serenity Pharm., LLC*, 391 F. Supp. 3d 265, 283 (S.D.N.Y. 2019) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

Collateral estoppel applies where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Levich v. Liberty Central School Dist.*, 361 F. Supp. 2d 151, 157 (S.D.N.Y. 2004) (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995)); *see also Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."). This standard is met here.

As she now argues in this case, Plaintiff argued in *Geller I* that she had a likelihood of success on the merits on a facial First Amendment challenge to a COVID-19 executive order precluding her from organizing a public protest. That the executive order at issue in *Geller I* was the City Defendants' total ban on non-essential gatherings, while here her challenge encompasses subsequent, less restrictive bans on non-essential gatherings issued by the City Defendants and the Governor, is not a material distinction for purposes of applying collateral estoppel. The issue necessarily decided in *Geller I* was the same issue presented on this application: whether the government's interest in protecting the public against the global pandemic outweighs Plaintiff's First Amendment right to protest under the applicable constitutional standard. Because Judge Cote held in *Geller I* that Plaintiff had no likelihood of success on the merits with respect to the earlier, more stringent total ban, that ruling was necessarily decisive as to Plaintiff's likelihood of success on the merits of her facial First Amendment challenge to the less restrictive executive orders now in force. Nor can there be any dispute that Plaintiff had a full and fair opportunity to litigate in this Court and on appeal to the Second Circuit

13

her application for interim injunctive relief. After losing in the trial court, Plaintiff requested that judgment be entered in favor of the City Defendants, and then voluntarily dismissed her appeal. While that dismissal was without prejudice to Plaintiff's right to assert her selective enforcement Equal Protection claim based on new facts that were not before Judge Cote in *Geller I*, it did not afford her "the proverbial second bite at the apple" to obtain a preliminary injunction based on her facial First Amendment claim. *Levich*, 361 F. Supp. 2d at 159.

Finally, applying collateral estoppel here serves the objectives of the doctrine, which are to "save[] parties and the courts from the waste and burden or relitigating stale issues, and, by discouraging inconsistent result, forwards public policy favoring the establishment of certainty in legal relations." *Ferring*, 391 F. Supp. 3d at 284 (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993)). After having lost on her facial First Amendment claim in *Geller I*, Plaintiff should not be permitted to raise the same issue for a second time in this action.

### B. Even If Collateral Estoppel Does Not Apply, Plaintiff Has No Likelihood Of Success On The Merits Of Her Facial First Amendment Claim For The Same Reasons Set Forth In *Geller I*

Even if the Court does not apply collateral estoppel, the framework for the Court's analysis is no different from the one applied by Judge Cote in *Geller I*, and should lead to the same result. *See McCarthy v. Cuomo,* No. 20 Civ. 2124, 2020 WL 3286530, at *4 (E.D.N.Y. June 18, 2020) ("I agree with Judge Cote's analysis that prohibitions on large public gatherings and other similar restrictions are narrowly tailored to the interest of protecting the public from COVID-19.").

As a threshold matter, in order to determine the constitutional standard to apply, a court must determine whether the challenged regulation is content-based or content-neutral. A regulation is content neutral if it "serves purposes unrelated to the content of expression . . . even if it has an incidental effect on some speakers or messages but not others." *Geller I*, 2020 WL 2520711 at *3 (citing *Hobbs v. County of Westchester*, 397 F.3d 133, 50 (2d Cir. 2005)). The COVID-19 Executive

Orders, which expressly apply to all non-essential gatherings without regard to the viewpoints being expressed, are content-neutral regulations because they are "restriction[s] designed to serve a governmental need to protect the security of the audience," and therefore "target[] the speech's secondary, rather than its primary effect."[4]  *Id.*

The content-neutral COVID-19 Executive Orders are subject to the "less stringent test" of intermediate scrutiny.  *Geller I*, 2020 WL 2520711 at *3 (citing *Hobbs v. County of Westchester*, 397 F.3d at 148-50); *see also McCarthy*, 2020 WL 3286530 at *4.  Under that standard, "the government may 'limit the time, place, or manner of expression – whether oral, written, or symbolized by conduct – even in a public forum,' so long as the measure is 'reasonable,' 'narrowly tailored to serve a significant governmental interest, and leave[s] open ample alternative channels for communication of the information.'"  *Geller I*, 2020 WL 2520711 at *4 (quoting *Hobbs*, 397 F.3d at 149).  "The narrow tailoring requirement is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation."  *Id.*

In assessing whether the COVID-19 Executive Orders are reasonable and narrowly tailored to serve a significant government interest, the Court should be guided by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)*, which Chief Justice Roberts cited as authoritative just six weeks ago in a case involving

---

[4] Plaintiff argues that the COVID-19 Executive Orders are content-based restrictions, not because of the language of the orders, but because "Defendants approve, permit, and thus agree with" the recent BLM protests while "prohibit[ing] other protest activity, specifically including Plaintiff's proposed protest."  PI Brief at 18.  Plaintiff's argument is misplaced.  On a facial challenge, a court "considers only the text of the [provision] itself, not its application to the particular circumstances of an individual."  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir 2006); *cf. Stagg P.C. v. U.S. Dep't of State,* 354 F. Supp. 3d 448, 462 (S.D.N.Y. 2019) ("The Court will thus consider Plaintiff's facial challenge solely as it pertains to the current text of the [challenged provision].").  Accordingly, Plaintiff may not assert on her facial challenge that the COVID-19 Executive Orders are content-based because of how they are allegedly applied to others.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) ("In determining whether a law is facially invalid, we must be careful not to go beyond the [law]'s facial requirements and speculate about hypothetical or imaginary cases.").

a California COVID-19 restriction. *South Bay Pentecostal Church v. Newsom*, 140 S.Ct. 1613, 1613 (2020) (Roberts, C.J., concurring); *see also Ass'n of Jewish Camp Operators v. Cuomo*, No. 20 Civ. 687, 2020 WL 3766496, at *8 (N.D.N.Y. July 6, 2020) ("the Court joins the many courts throughout the country that rely on *Jacobson* when determining if a governor's executive order has improperly curtailed an individual's constitutional right during the COVID-19 pandemic" and conducting traditional First Amendment analysis only in the alternative) *Six v. Newsom*, No. 20 Civ. 877, 2020 WL 2896543, at *3 (C.D. Cal. May 22, 2020) (discussing *Jacobson* as "the well-established test that governs when courts are asked to analyze the constitutionality of state powers to protect the public health"); *Slidewaters*, 2020 WL 3130295 at *4 (applying *Jacobson* standard in dismissing constitutional challenge to COVID-19 measures). In *Jacobson*, the Supreme Court declared that "a community has the right to protect itself against an epidemic of disease which threatens its members," and that in such times judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31; *see also South Bay*, 140 S.Ct. at 1613-14 (Roberts, C.J., concurring) (emphasizing that the latitude given to state officials responding to public health crises "must be especially broad," such that "[w]here those broad limits are not exceeded, they should not be subject to second-guessing by an unelected federal judiciary").

The COVID-19 Executive Orders easily pass the intermediate scrutiny test when applied through the lens of *Jacobson*, as it must be. *See Geller I*, 2020 WL 2520711 at *3 (declaring that "it is necessary to review the restriction expressed in [New York City's executive order] through that lens" of *Jacobson*). There can be no question that the COVID-19 Executive Orders were "enacted to protect the public health" and have a "real or substantial relation" to that objective. *Jacobson*, 197 U.S. at 31. The entire nation is familiar with the deadly nature of COVID-19 and the critical role that social distancing plays in preventing its spread. *See Lighthouse Fellowship Church v. Northam*, No. 20 Civ. 204,

2020 WL 2110416, at *12 (E.D. Va. May 1, 2020) (declaring a ban on gatherings "essential to further the interests of slowing the spread of a deadly pandemic and preserving human life"); *see also* Hutton Decl. ¶¶ 7-27. Plaintiff "acknowledge[d] the significance of the governmental interest" in *Geller I*, and Judge Cote emphasized the point, noting that "it bears repeating what is at stake" because the government "seeks to slow the spread of a virus that has hospitalized and killed tens of thousands of New Yorkers – and infected hundreds of thousands more – in less than three months' time." 2020 WL 2520711 at *4. The public health impact of the COVID-19 Executive Orders in effectively fighting the virus is borne out in New York State's data; as Judge Cote noted in *Geller I*, "the declining rates of infection and death among New Yorkers is evidence not that the gatherings ban is overly broad, but rather that it is effective." *Id.* at *4. That conclusion has only been bolstered in recent weeks; as conditions continue to improve in New York State, other states that imposed few or no restrictions have seen an alarming surge in infection rates, new cases, and deaths.[5] Hutton Decl. ¶¶ 43-47.

Moreover, because there are "ample alternative channels for the communication of the [Plaintiff's] information," Plaintiff's contention that the COVID-19 Executive Orders leave her with no reasonable or effective alternatives to express her views has no merit. *See Geller I*, 2020 WL 2520711 at *4 (noting Plaintiff is "free to express her discontent online, through media, and by protesting in public on her own."). Indeed, the Court may take judicial notice that Plaintiff has 1,289,034 followers on Facebook (*see* https://www.facebook.com/pamelageller), over 200,000 followers on Twitter (*see* https://bit.ly/2YSC3QK), 108,000 followers on Instagram (*see*

_____

[5] This surge has prompted the Governor to issue EO 205 requiring those entering New York from states with high positivity test rates to quarantine. Hutton Decl. at ¶ 45. On July 2, 2020, Judge Schofield refused to issue a temporary restraining order against EO 205. *Corbett v. Cuomo*, No. 20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020).

https://www.instagram.com/pamelageller/), and 28,900 followers on YouTube (*see* https://www.youtube.com/user/atlasshrugs2000).[6] *Braun v. United Recovery Systems, LP*, 14 F. Supp. 3d 159, 164 (S.D.N.Y. 2014) ("Rule 201 of the Federal Rules of Evidence provides that a court may judicially notice a fact 'that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)). The reach of Plaintiff's social media accounts undercuts her assertion that a protest of between 25 to 100 people "is the most effective way" for her to express her point of view. Geller Dec., Dkt. No. 17, ¶ 64.

In the wake of the COVID-19 global pandemic, there is now a tsunami of precedent rejecting challenges to state and local government restrictions enacted over the past few months to safeguard the public from infection and death.[7] The undeniable public interest in fighting COVID-19 has not

---

[6] Plaintiff has in fact regularly used these channels to protest New York's policies, including a post about this lawsuit, *see* https://www.facebook.com/pamelageller/posts/10159555602397439, another deriding the requirement of wearing masks, https://www.facebook.com/pamelageller/posts/10159470575842439, and one objecting to the Executive Orders as an attempt to seize complete dictatorial control," *see* https://www.facebook.com/pamelageller/posts/10159398494187439. Plaintiff also claims to have published multiple books, written op-eds in publications all over the world, and regularly appears on television. *See* https://gellerreport.com/about/.

[7] *See League of Independent Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 20-1581, 2020 WL 3468281 (6th Cir. June 24, 2020) (MI order closing indoor gyms); *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 3249062 (7th Cir. June 16, 2020) (IL order limiting size of religious services); *Elim Romanian Pentecostal Church v. Pritzker*, No. 20-1811, 2020 WL 2517093 (7th Cir. May 16, 2020) (IL order limiting size of religious services); *In re Abbott*, 954 F.3d 772 (5th Cir. Apr. 7, 2020) (TX temporary ban on unnecessary procedures, including abortion); *Ass'n of Jewish Camp Operators v. Cuomo*, No. 20 Civ. 687, 2020 WL 3766496 (N.D.N.Y. July 6, 2020) (NY order closing summer camps); *Corbett v. Cuomo*, No. 20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020) (NY order requiring travel quarantine); *Ill. Republican Party v. Pritzker*, No. 20 Civ. 3489, 2020 WL 3604106 (N.D. Ill. July 2, 2020) (IL gatherings restriction); *Elmsford Apt. Associates, LLC v. Cuomo*, No. 20 Civ. 4062, 2020 WL 3498456 (S.D.N.Y. June 29, 2020) (NY eviction moratorium); *McCarthy v. Cuomo*, No. 20 Civ. 2124, 2020 WL 3286530, at *3 (E.D.N.Y. June 18, 2020) (NY gathering restriction); *Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, No. 20 Civ. 210, 2020 WL 3130295 (E.D. Wash. June 12, 2020) (WA order closing certain businesses); *Calvary Chapel Lone Mtn. v. Sisolak*, No. 20 Civ. 907, 2020 WL 3108716 (D. Nev. June 11, 2020) (NV order limiting size of religious services); *Professional Beauty Fed. of Cal. v. Newsom*, No. 20 Civ. 4275, 2020 WL 3056126 (C.D. Cal. June 8, 2020) (CA order closing non-essential

diminished since this nationwide "chorus" of cases was decided.[8]  *Open Our Oregon*, 2020 WL 2542861

at *2.  In fact, it has only grown, with the U.S. hitting a new all-time high in COVID-19 cases as new

outbreaks appear with greater and alarming frequency.  Hutton Decl. ¶¶ 43-44, 47.

Simply put, Plaintiff has "presented no argument which would make [her] challenge likely to

succeed where so many others have failed." *McCarthy*, 2020 WL 3286530 at *3.

### C. Because the COVID-19 Executive Orders Have Not Been Enforced Against Her, Plaintiff Cannot Assert an "As Applied" First Amendment Challenge

Plaintiff purports to assert an "as applied" First Amendment challenge to the COVID-19

Executive Orders.  Compl. ¶¶ 79, 81.  However, Plaintiff fails to allege that any governmental actor

has ever charged Plaintiff with violating the COVID-19 Executive Orders or otherwise enforced them

---

businesses); *Talleywhacker, Inc. v. Cooper*, No. 20 Civ. 218, 2020 WL 3051207 (E.D.N.C. June 8, 2020) (NC order closing non-essential businesses); *Best Supplement Guide, LLC v. Newsom*, No. 20 Civ. 965, 2020 WL 2615022 (E.D. Cal. May 22, 2020) (CA order closing non-essential businesses); *Antietam Battlefield KOA v. Hogan*, No. 20 Civ. 1130, 2020 WL 2556496 (D. Md. May 20, 2020) (MD gathering restriction); *Open Our Oregon v. Brown*, No. 20 Civ. 773, 2020 WL 2542861 (D. Or. May 19, 2020) (OR order closing non-essential businesses); *Geller I*, 2020 WL 2520711 (NY gathering restriction); *Henry v. DeSantis*, No. 20 Civ. 80729, 2020 WL 2479447 (S.D. Fla. May 14, 2020) (FL order closing businesses and restricting movement); *Calvary Chapel of Bangor v. Mills*, No. 20 Civ. 156, 2020 WL 2310913 (D. Me. May 9, 2020) (ME gatherings restriction); *McGhee v. City of Flagstaff*, No. 20 Civ. 8081, 2020 WL 2308479 (D. Az. May 8, 2020) (AZ stay-at-home order and order closing businesses); *Cross Culture Christian Ctr. v. Newsom*, No. 20 Civ. 832, 2020 WL 2121111 (E.D. Cal. May 5, 2020) (CA gathering restriction); *Cassell v. Snyders*, No. 20 C 50153, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (IL stay-at-home order); *Lighthouse Fellowship Church v. Northam*, No. 20 Civ. 204, 2020 WL 2110416 (E.D. Va. May 1, 2020) (VA gathering restriction); *Gish v. Newsom*, No. 20 Civ. 755, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (CA stay-at-home order); *Legacy Church, Inc. v. Kunkel*, No. 20 Civ. 327, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) (NM gathering restriction).

[8] The recent decision in *Soos v. Cuomo*, No. 20 Civ. 651, 2020 WL 3488742 (N.D.N.Y. June 26, 2020), granting a preliminary injunction enjoining the enforcement of New York's gathering bans solely as to the plaintiffs in that case – all clergy – based on a Free Exercise Clause challenge, is not applicable here.  Plaintiff does not raise a Free Exercise Clause claim and the court in *Soos* expressly declined to address the plaintiffs' First Amendment and Equal Protection claims.  *See Soos*, 2020 WL 3488742 at *4 n.4 ("Because each of the prongs is met with respect to plaintiffs' Free Exercise Clause claim, the court need not, and does not, analyze the remainders.").  The *Soos* court has made clear that its ruling applies to that case's plaintiffs, only.  *See Soos v. Cuomo*, No. 20 Civ. 651, Dkt. No. 38 (N.D.N.Y. July 1, 2020) (denying as "obviously without merit, and arguably frivolous" a motion to apply injunction in favor of nonparty).

against her; all she alleges in her Complaint is that "[u]pon learning of Defendant de Blasio and Shea's position that public protests were considered non-essential activity and thus forbidden under the executive orders, Plaintiff cancelled her planned protest," Compl. ¶ 57, and that "[b]ut for the challenged First Amendment restrictions, Plaintiff would have organized and participated in several public protests." Compl. ¶ 58. Accordingly, Plaintiff brings this action before the COVID-19 Executive Orders have been enforced against her.

Any "pre-enforcement" challenge to a state law, defined as one brought "before [any plaintiffs] have been charged with any violation of law," must be facial in nature, rather than as-applied. *Jacoby & Meyers, LLP v. Presiding Justices*, 852 F.3d 178, 184 (2d Cir. 2017) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015)). Plaintiff's allegation that she is asserting an "as applied" challenge does not make it so. *Jacoby & Meyers, LLP v. Presiding Justices*, 118 F. Supp. 3d 554, 566 n.50 (S.D.N.Y. 2015) ("To the extent [plaintiff] attempts to characterize its [pre-enforcement] lawsuit as an as-applied challenge, it simply does not appreciate the distinction between as-applied and facial challenges. This is a quintessential facial challenge."), *aff'd* 852 F.3d 178 (2d Cir. 2017). Because Plaintiff has not alleged the predicate facts to support an as applied First Amendment challenge, she has no likelihood of success on the merits of that claim.

### D. Plaintiff Is Not Likely To Succeed On The Merits Of Her Selective Enforcement Equal Protection Claim

Plaintiff similarly has not established a clear or substantial likelihood of success on the merits of her selective enforcement Equal Protection claim for multiple reasons. As a threshold matter, a plaintiff cannot succeed on an Equal Protection claim based on selective enforcement where, as here, there has been no effort to enforce the challenged regulation against the plaintiff. The Second Circuit has held that an Equal Protection claim based on selective enforcement will "coalesce" with an as applied First Amendment challenge, and where the as applied First Amendment challenge is legally insufficient – as is the case here (*see, supra*, at I.C.) – "the Equal Protection claim must also fail as a

matter of law." *Heusser v. Hale*, 777 F. Supp. 2d 366, 385 (D. Conn. 2011) (citing *Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2003) and *African Trade & Info. Ctr. v. Abromaitis*, 294 F.3d 355, 363 (2d Cir. 2002)). Accordingly, because Plaintiff's as applied First Amendment claim cannot succeed for the reasons set forth above, her Equal Protection claim will fail as well. *See Cobb*, 363 F.3d at 110 ("Our holding on the First Amendment retaliation claim that the evidence in this case was insufficient, as a matter of law, . . . requires that we direct entry of judgment for the defendants on Plaintiffs' selective prosecution claim as well.").

Even putting aside the legal insufficiency of Plaintiff's Equal Protection claim in the absence of a viable as applied First Amendment challenge, Plaintiff would still have no likelihood of success on the merits of her Equal Protection claim against the Governor. "To properly plead a selective enforcement claim in violation of the Equal Protection Clause, a plaintiff must proffer sufficient factual allegations supporting '(1) that the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bar-Levey v. Gerow*, No. 18 Civ. 9454, 2020 WL 814925, at *5 (S.D.N.Y. Feb. 19, 2020) (brackets omitted) (quoting *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017)). "Notably, under the first prong of the selective enforcement analysis, a plaintiff must identify a similarly situated comparator and, second, he or she must show that, compared with others similarly situated, he or she was treated differently." *Id.*

Plaintiff has not done this. Instead, she has referred only generally to "hundreds and thousands of protestors" demonstrating in response to the death of George Floyd and in support of the Black Lives Matter movement. *See* Compl. ¶ 49; *see Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) ("Yet, more than a bare allegation that other [comparators] were treated differently is required."); *see also Rosario v. Town of Mt. Kisco*, No. 16 Civ.

8766, 2020 WL 76420, at *6 (S.D.N.Y. Feb. 14, 2020) (holding plaintiff's "generalized description of potential comparators" was insufficient).  Notably absent from the Complaint is any allegation about whether the BLM protests were conducted pursuant to permits, whether the protests were organized by any individual or group, and if so, how.  Most importantly, Plaintiff has "failed to allege any facts showing that [s]he was treated differently," *Kamholtz v. Yates County*, 350 F. App'x 589, 590 (2d Cir. 2009) (summary order), or that any state actor interacted with her at all.  *See* Compl. ¶¶ 55-59 (alleging no contact with government officials before Plaintiff unilaterally "cancelled her planned protests").

Nor are there any well-pleaded allegations asserting that Governor Cuomo played any role in deciding whether or how to enforce the COVID-19 Executive Orders vis-à-vis the BLM protests.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Plaintiff's Complaint contains no factual allegations to connect the Governor with any alleged selective enforcement of the COVID-19 Executive Orders.  The Complaint contains only one paragraph that attempts to make this connection based on a single press release, but fails.  Nothing in the quoted press release reasonably infers that Governor Cuomo is attempting to "suppress those viewpoints that oppose efforts by government officials to control people's lives" or that he "permit[s] protests that express views that Defendants' favor."  Compl. ¶¶ 70-71.  Instead, the press release establishes that while Governor Cuomo may support "the [BLM] protestors and their message," he continued to emphasize that the effort to fight COVID-19 "is paramount and cannot be compromised."  Compl. ¶ 51.  And the context of the statement bears that out, as the Governor and the Mayor were announcing in the press release the imposition of a citywide curfew and a doubling of NYPD presence in affected areas, two measures aimed at curtailing what Plaintiff repeatedly contends were "government-approved protests."  *Id.* ¶¶ 50, 51, 71, 85.

The remainder of Plaintiff's Complaint consists of generalized and undifferentiated allegations about "Defendants," allegations regarding the conduct of Mayor de Blasio or the NYPD Commissioner,[9] or conclusory (and frequently inflammatory) statements devoid of any actual factual allegations. *See, e.g.,* Compl. ¶ 3 (alleging that "Defendants permit and strongly endorse" BLM protests); ¶ 11 (alleging that "Defendant Cuomo is responsible for adopting, creating, and enforcing . . . the challenged policy and practice of suspending the First Amendment for some protestors"); ¶ 70 (alleging that "Defendants de Blasio and Cuomo seek to silence such opposition to their respective policies so that they can retain their political power."). None of these conclusory assertions are supported by any actual factual allegations regarding Governor Cuomo. *See Iqbal*, 556 U.S. at 679 (holding conclusory allegations "are not entitled to the assumption of truth"); *Lilakos v. N.Y. City*, 808 F. App'x 4 (2d Cir. Apr. 8, 2020) (summary order) ("Plaintiffs' allegations of being 'singled out' and 'targeted' are conclusory and cannot be accepted as true . . . ."). Because Plaintiff has not carried her pleading burden, she has failed to establish any likelihood of success on the merits.[10]

Finally, Plaintiff's conclusory allegations that Defendants selectively enforce the COVID-19 Executive Orders against everyone (including her) except those participating in BLM protests are

---

[9] Although the Complaint makes a number of allegations regarding the conduct of the NYPD, these allegations have no relevance to a claim against Governor Cuomo, who does not control the NYPD. *See Illinois Republican Party v. Pritzker*, No. 20 Civ. 3489, 2020 WL 3604106, at * 4 (N.D. Ill. July 2, 2020) (denying TRO to enjoin a COVID-19 executive order because plaintiffs "failed to point to a single instance in which they, or anyone similarly situated, protested with political messages and *state officials* enforced the Order against them because of this content.") (emphasis in the original).

[10] It is hardly surprising that Plaintiff is unable to allege the Governor played any role in the purported selective enforcement of the COVID-19 Executive Orders. While the Governor is empowered to issue emergency directives in the event of a disaster such as the COVID-19 pandemic, *see* N.Y. Exec. Law § 29-a, it is the NYPD that administers the permitting procedures for demonstrations in New York City, *see* https://www1.nyc.gov/site/nypd/services/law-enforcement/permits-licenses-permits.page, under the supervision of the NYPD Commissioner, who is appointed by Mayor de Blasio, *see* N.Y. City Charter §§ 431(a), 434.

belied by the numerous news accounts of recent protests that have occurred throughout the State that have nothing to do with the BLM protests – of which the Court may take judicial notice[11] – including:

- **Albany, April 16** – "About 30 people gathered to defy social distancing rules . . . ." No arrests were reported. *See* Geoff Herbert, *Small protest in Albany demands "communist" Cuomo lift stay-at-home order in NY*, Syracuse Post-Standard, Apr. 16, 2020, available at https://bit.ly/2BW8a9j.

- **Buffalo, May 1** – "Dozens of people gathered with signs and flags" outside the Erie County Rath Building, "calling on officials to reopen." No arrests were reported. *See* WGRZ, *Protesters outside Rath Building calling on officials to reopen*, May 1, 2020, available at https://bit.ly/2VEerNK.

- **Albany, May 1** – "Well over 100 protestors stood outside the state Capitol to decry the closure of businesses," with no arrests reported. *See* Steve Hughes, *Groups protest outside Capitol, governor's mansion over state closures*, Albany Times-Union, May 1, 2020, available at https://bit.ly/3gnyKao.

- **New York City, May 16** – COVID-19 restrictions "led dozens of Staten Island residents to gather near Victory Boulevard on Saturday" to protest. No arrests were reported. *See* Amy Yensi, *Protesters Hold Rally on Staten Island, Urge Governor Cuomo to Reopen NYC*, Spectrum 1, May 16, 2020, available at https://bit.ly/2ZApQzx.[12]

Because Plaintiff has no clear or substantial likelihood of success on the merits, the Court has no need to consider the other factors under the preliminary injunction standard. *Geller I*, 2020 WL 2520711, at *5 (citing *Hsu v. Roslyn Union Free School Dist. No. 3*, 85 F.3d 839, 853 (2d Cir. 1996)).

## II. THE PUBLIC INTEREST WEIGHS IN FAVOR OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS FROM A GLOBAL PANDEMIC

To the extent the Court considers the balance of the equities and public interest prongs of the preliminary injunction standard, they also require the denial of Plaintiff's motion. Without doubt the State has a vitally important interest in fighting the threat to public health posed by the pandemic through limiting the number of participants in non-essential gatherings. *See Bayley's Campground Inc. v.*

---

[11] Courts regularly take judicial notice of "publicly available documents, including . . . information contained on websites where 'the authenticity of the site has not been questioned.'" *Fernandez v. Zoni Language Centers, Inc.*, No. 15 Civ. 6066, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) (quoting *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 11 F.3d 539, 549 (2d Cir. 2002)).

[12] There are over a dozen additional examples recounted in the press that are not listed here due to space constraints, but can be provided upon the Court's request.

*Mills,* No. 20 Civ. 176, 2020 WL 2791797, at *13 (D. Me. May 29, 2020) (finding on a challenge to Maine's 14-day self-quarantine requirement that "[t]he type of injunctive relief Plaintiffs seek would upset the bedrock of the state's public health response to COVID-19, an area this Court does not wade into lightly"); *see also Lighthouse Fellowship Church*, 2020 WL 2110416, at *16 ("Every gathering of more than ten people endangers health and life and increases the burden on the frontline healthcare workers tasked with caring for those afflicted."). In contrast, the imposition on Plaintiff is minimal: she is able to protest in person so long as the total attendance is under the applicable limit (now 25 in New York City), and she can continue to speak out to her more than one million followers through her social media platforms, books, articles, and regular television appearances. *See* Point I-B, *supra*.

Moreover, the public interest would be disserved by enjoining the Governor and City Defendants from enforcing the COVID-19 Executive Orders, which would threaten to reverse the significant gains New York has made over the past three months in flattening the curve, lowering the infection rate, and decreasing the number of new cases and deaths. *See Jewish Camp Operators*, 2020 WL 3766496 at *21 ("Given the unprecedented nature of the COVID-19 pandemic, the deadly nature of the virus itself, the lack of a vaccine at the time of this writing, and lack of scientific agreement about its transmission, the Court concludes that the issuance of an injunction is not in the public interest at this time."). The surge that numerous other states are seeing due to little or no enforcement of gathering restrictions and other social distancing protocols is a stark reminder that the pandemic is not over in New York. Hutton Decl. ¶¶ 43-47. There is a great need for continued vigilance in enforcing the COVID-19 Executive Orders for the benefit and protection of public health. *Id.*

Accordingly, the public interest and equitable considerations require the denial of Plaintiff's motion. *See Winter*, 55 U.S. at 23-24 (holding "proper consideration" of public interest and equitable factor "alone require[d] denial of the requested injunctive relief").

25

**CONCLUSION**

For the reasons set forth above, Governor Cuomo respectfully requests that the Court deny

Plaintiff's motion and grant such other and further relief as it deems just and proper.

Dated: New York, New York
      July 8, 2020

                                       LETITIA JAMES
                                       Attorney General
                                       State of New York

                              By:   */s/ Andrew Amer*
                                     Andrew Amer
                                     Special Litigation Counsel
                                     James M. Thompson
                                     Assistant Attorney General
                                     28 Liberty Street
                                     New York, NY  10005
                                     (212) 416-6127

                                *Attorney for Defendant Governor Cuomo*